GRIFFIN LLP
420 Lexington Avenue, Suite 400
New York, NY 10170
(646) 998-5580
Scott A. Griffin
Richard K. Milin

*Counsel for Arch Real Estate Holdings LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x
                                          :

 608941 NJ INC.,
                                          :

                           Plaintiff,       :

         v.                                   :   Case No.: 1:23-cv-08966 (ALC)

                                          :

JEFFREY SIMPSON, JJ ARCH LLC, and       :
ARCH REAL ESTATE HOLDINGS LLC,
                                          :

                          Defendant.     :

--------------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND FOR A PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 4

ARGUMENT: PLAINTIFF'S MOTION TO REMAND OR FOR A PRELIMINARY
INJUNCTION SHOULD BE DENIED.......................................................................................... 6

   I.   THIS CASE WAS PROPERLY REMOVED TO THIS COURT ...................................... 6

   II.   THIS COURT SHOULD NOT ENJOIN OR RESTRICT DEFENDANT'S RIGHT TO
      SEEK BANKRUPTCY PROTECTION ......................................................................... 12

CONCLUSION..................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Fallick v. Kehr*, 369 F.2d 899 (2d Cir. 1966) ........................................................ 1, 14

*Friends of Wickers Creek Archeological Site, Inc. v. Landing on the Water at Dobbs Ferry Homeowners Ass'n, Inc.*, 198 A.D.3d 726 (2d Dept. 2021) ....................................... 13

*Grable & Sons Metal Prods., Inc. v. Darue Engineering*, 545 U.S. 308 (2005) ........................... 7

*Gunn v. Minton*, 568 U.S. 251 (2013) ....................................................................... 7, 8

*Hughes v. BCI Int'l Holdings*, 452 F. Supp. 2d 290 (S.D.N.Y. 2006) ........................................ 18

*In re 3P Hightstown, LLC*, 631 B.R. 205 (Bankr. D. N.J. 2021) ................................... 2, 7, 11, 15

*In re Bay Club Partners-472, LLC*, 2014 WL 1796688 (Bankr. D. Or. May. 6, 2014) ........... 1, 14

*In re Huang*, 275 F.3d 1173 (9th Cir. 2002) ................................................................. 14

*In re Intervention Energy Holdings, LLC*, 553 B.R. 258 (Bankr. D. Del. 2016) ............ 8, 9, 11, 14

*In re Lake Michigan Beach Pottawattamie Resort LLC*, 547 B.R. 899 (Bankr. N.D. Ill. 2016) ...................................................................................... 19

*In re Lexington Hospitality Group*, 577 B.R. 676 (Bankr. E.D. Ky. 2017)..............8, 9, 11, 14

*In re Pace Industries*, Case No. 20-10927 (MFW) (Bankr. D. Del. May 5, 2020)……………………………………………… 2, 3, 8, 9, 11, 14, 15

*In re Quad-C Funding LLC*, 496 B.R. 135 (Bankr. S.D.N.Y. 2013) .................................... 2, 8, 10

*In re Weitzen*, 3 F. Supp. 698 (S.D.N.Y. 1933) ........................................................ 1, 14

*Kalikow v. Shalik*, 986 N.Y.S.2d 762 (Sup. Ct. Nassau Cty. 2014) ............................................. 19

*Moreno-Godoy v. Kartagener*, 7 F.4th 78 (2d Cir. 2021)............................................................. 13

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32 (2d Cir. 2018).................. 12

*N.Y. Credit Men's Adjustment Bureau, Inc. v. Weiss*, 305 N.Y. 1 (1953) ................................... 18

*North American Catholic Educational Programming Foundation v. Gheewalla*,
   930 A.2d 92 (Del. 2007) ........................................................................................ 18

*Price v. Gurney*, 324 U.S. 100 (1945) ....................................................................... 10

*United States Small Bus. Admin. v. Feinsod*, 347 F. Supp. 3d 147 (E.D.N.Y. 2018).................. 18

Statutes and Other Authorities

11 U.S.C. §§ 101, *et seq.* ............................................................................................ 7

11 U.S.C. § 507 .......................................................................................................... 17

11 U.S.C. § 510(c) ...................................................................................................... 17

11 U.S.C. § 1112(b) ..................................................................................... 10, 17, 19, 20

28 U.S.C. § 1331 ........................................................................................................... 6

28 U.S.C § 1334 .......................................................................................................... 7

28 U.S.C. § 1441(a) ...................................................................................................... 6

U.S. Constitution, Article I ...................................................................................... 9, 17

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO REMAND AND FOR A PRELIMINARY INJUNCTION**

Defendant Arch Real Estate Holdings LLC ("Defendant" or "AREH"), by its undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Plaintiff's Motion to Remand and for a Preliminary Injunction (the "Motion") and respectfully represents as follows:

## PRELIMINARY STATEMENT

Plaintiff, one of Defendant's investors, seeks to usurp control over, and potentially eliminate, Defendant's fundamental, constitutionally based federal right to seek bankruptcy court protection. For decades, in case after case, the federal courts have rejected creditors' and investors' efforts to limit bankruptcy rights, and thereby improve their position at the expense of other stakeholders, as contrary to the policies of the former Bankruptcy Act and current Bankruptcy Code.

Ninety years ago, in *In re Weitzen*, this Court held: "The agreement to waive the benefit of bankruptcy is unenforceable. To sustain a contractual obligation of this character would frustrate the object of the Bankruptcy Act…" *Id.*, 3 F. Supp. 698, 698 (S.D.N.Y. 1933). Thirty years later, the Second Circuit endorsed the same principle, though in dictum, stating that "an advance agreement to waive the benefits of the Bankruptcy Act would be void." *Fallick v. Kehr*, 369 F.2d 899, 904 (2d Cir. 1966).

In recent decades, creditors and investors have continued their efforts to stop debtors from seeking the protections of the Bankruptcy Code, and the courts have continued, with few exceptions, to say "*no*." *See, e.g.*, *In re Bay Club Partners-472, LLC*, 2014 WL 1796688 (Bankr. D. Or. May. 6, 2014) (refusing to enforce a bankruptcy waiver in an LLC Agreement). Notably, in 2020, a Delaware bankruptcy judge invalidated a preferred shareholder's "blocking right" to control bankruptcy filings just like the "blocking right" asserted here: "I think it is clear that a lack

1

of access to the Bankruptcy Code and the Bankruptcy Courts would violate…federal public policy….[F]ederal policy…require[s] that the Court consider what is in the best interest of all." *In re Pace Industries*, Case No. 20-10927 (MFW), Dkt. No. 148 at 42 (Bankr. D. Del. May 5, 2020). As *Pace* recognized, a prohibition on bankruptcy filings does not just harm the debtor and interfere with its reorganization – it alters the relative rights of employees, unsecured creditors and equity holders as well.

Despite the federal courts' long history of protecting federal bankruptcy rights, and their express recognition of those rights in the LLC context, Plaintiff tells this Court, "whether a party has authority to file a bankruptcy petition on an LLC's behalf is strictly a matter of state law." (Pl. Mem. at 2.)  As the foregoing cases establish, Plaintiff is wrong.  Significantly, two of the cases Plaintiff itself relies on recognize that authority to file a bankruptcy case is only "initially" a state law issue, and then proceed to address federal law concerns.  *See In re 3P Hightstown, LLC*, 631 B.R. 205, 211 (Bankr. D. N.J. 2021); *In re Quad-C Funding LLC*, 496 B.R. 135, 141 (Bankr. S.D.N.Y. 2013).

Ironically, former Bankruptcy Judge Allan L. Gropper of this District, who authored Plaintiff's *Quad-C* case, has since joined a group of law professors and retired bankruptcy judges in filing an amicus brief to emphasize that the propriety of bankruptcy filings must be determined in federal court: "The propriety of a bankruptcy filing is squarely and solely for the federal courts— the bankruptcy courts, most obviously, the district courts, and courts of appeals—and not the state courts, to resolve."  Brief of Amici Curiae Hon. J. Melanie L. Cyganowski, *et al.*, in Support of Petitioners at 3, *Philip Pilevsky v. Sutton 58 Associates, LLC*, No. 20-1483 (U.S. Supreme Court April 2021).

Here, Plaintiff's Motion asks for an injunction – for which it cites no precedent – to stop Defendant from seeking bankruptcy court protection.  For that reason, Plaintiff's Motion necessarily concerns federal bankruptcy law, policy and rights, and it belongs in federal court.  Moreover, based on federal law, policy and rights, Plaintiff's asserted "blocking right," on which it premises its claim for an injunction, should be held unenforceable.

Plaintiff is attempting to place Defendant in a vice:  it refuses to honor capital calls or provide Defendant with the money it needs to operate, yet it is simultaneously trying to block Defendant's access to bankruptcy court.  Plaintiff has also sought to preempt this Court's ruling by seeking a receiver for the JJ Arch Defendant in state court, filing an order to show cause on October 17, 2023, in an action in which Plaintiff was not even a party.  *See* Supreme Court of the State of New York, N.Y. County, Index No. 158055/2023, Dkt. No. 225.

Whatever Plaintiff's game plan may be, it necessarily implicates the Bankruptcy Code's twin goals of providing businesses with a "fresh start" and ensuring an equitable distribution of financially struggling companies' assets among their stakeholders, either in a restructuring or in a court-supervised liquidation.  Because Defendant is a vertically integrated company, the interests of its employees and creditors, and its subsidiaries' employees and creditors, and the investors, service providers, creditors and other stakeholders in the many properties Defendant manages, are all at issue here.   For that reason, given *Pace*'s admonition that, "[F]ederal public policy…require[s] that the Court consider what is in the best interest of ***all***," federal law and the federal courts must determine whether Defendant is permitted to file a bankruptcy petition. *See id at 42.* (emphasis added). As shown further in Points I and II below, Plaintiff's Motion for a preliminary injunction should be decided by this Court, and it should be denied.

3

The only remaining issue is Plaintiff's request for a preliminary injunction directing Defendant to provide access to documents and information. That issue is now moot, because on October 19, 2023, Plaintiff obtained an order in state court granting it access. The issue of supplemental jurisdiction is similarly moot. Accordingly, those issues are not addressed below.

## STATEMENT OF FACTS

This case, prior to its removal, was a civil action filed on October 10, 2023 in the Supreme Court of the State of New York, New York County, as *608941 NJ Inc. v. Jeffrey Simpson, JJ Arch LLC, and Arch Real Estate Holdings LLC,* Index No. 654963/2023 (the "Removed Case"). Plaintiff filed an order to show cause with a request for a T.R.O. in the Removed Case which sought to deprive Defendant of the federal right to seek bankruptcy protection and ordered Defendant to provide documents and information. [Removed Case Dkt. No. 22] Plaintiff served an amended order to show cause in the late evening on October 11, 2023. [Removed Case Dkt. No. 30] Defendant filed its Notice of Removal on October 12, 2023, and Plaintiff filed its Motion to remand or for a preliminary injunction the next day. [Dkt. Nos. 9 - 11]

Plaintiff's Motion seeks substantially the same injunctive relief it sought in the Removed Case for substantially the same reasons, and Plaintiff's Memorandum relies on its papers in the Removed Case for its substantive arguments in support of its requested preliminary injunction. (*See* Pl. Mem. at 9-11.) This Court granted Plaintiff a T.R.O. restraining any bankruptcy filing *pendente lite* in its order dated October 13, 2023. [Dkt. No. 13]

Plaintiff's Complaint expressly seeks "injunctive relief restraining Defendants from initiating a bankruptcy action in respect of [Defendant] AREH or any entity subject to the AREH LLC Agreement." (Complaint ¶ 3, Count III.) It also seeks "a declaration that no bankruptcy action may be initiated for any entity subject to the AREH LLC Agreement without [Plaintiff's]

4

consent." (*Id.*, Count IV.)   Although the Complaint does not define "bankruptcy action," its allegations make clear that "filing for bankruptcy" would be a "Bankruptcy Action."   (*See* Complaint ¶¶ 56-63.)

Plaintiff is a minority "Investor Member" in Defendant, owning 20% of the company. Defendant JJ Arch is Defendant's majority owner, as the parties' agreed in organizational documents.  (*See* Declaration of Jeffrey Simpson dated October 20, 2023 ("Simpson Decl.") ¶ 3.)

Defendant is a vertically integrated enterprise which operates through subsidiaries and affiliates to manage approximately twenty real properties, including management, construction and renovation of those properties.  Defendant has employees and creditors, and its subsidiaries have employees, creditors and service providers.  (*See id.* ¶ 4.)

Each of the properties Defendant manages has investors, creditors, service providers and other stakeholders including, on some occasions, construction and maintenance workers.  The investors in the properties have more than $150 million at stake which would be at risk if, despite capital calls, Defendant is unable to raise the funds necessary to operate effectively.  Defendant, its subsidiaries and properties have approximately sixty employees.  (*See* id. ¶ 5.)

Plaintiff has repeatedly and expressly refused to supply further funds to Defendant as the AREH LLC Agreement requires.  (*See* Complaint, Exh. 1 ("the LLC Agreement"), Article III; Simpson Decl. ¶ 6.)  Plaintiff has also sought, contrary to the provisions of the LLC Agreement, to participate in Defendant's management by purporting to install Jared Chassen as Defendant's manager in August 2023 and participating in management controls themselves (*See* Simpson Decl. ¶ 6; LLC Agreement § 7.12.)

If Defendant lacks sufficient funds, the many stakeholders in Defendant's vertically integrated enterprise will likely be significantly impacted, because they will not be paid.  (*See id*. ¶ 7.)

Defendant's decision to file or not to file a bankruptcy petition would necessarily affect whether its employees and creditors are paid, whether employees and creditors of its subsidiaries and the properties it manages are paid, whether the properties it manages go into default, and whether Plaintiff or other investors will incur significant losses.  (*See id.* ¶ 8.)

In addition, if Defendant fails to file a bankruptcy when bankruptcy would be the best option for its stakeholders, the result could be devastating to the investors who have invested approximately $150 million in the real estate properties that Defendant manages, which could be subject to foreclosure.  (*See id*. ¶ 9.)

If Plaintiff is granted a "blocking right" to veto any bankruptcy, Defendant believes that Plaintiff could ignore the Bankruptcy Code's provisions for payment of stakeholders and favor its own interests instead.  (*See id.* ¶ 10.)  Based on Plaintiff's past conduct, Defendant believes that is exactly what Plaintiff is likely to do.  (*See id.* ¶ 10.)  Certainly, Plaintiffs' court papers have expressed no concern for the interests of other stakeholders.

## ARGUMENT

## PLAINTIFF'S MOTION TO REMAND OR FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED

## I.   THIS CASE WAS PROPERLY REMOVED TO THIS COURT

The federal removal statute, 28 U.S.C. § 1441(a), provides that, "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  Under 28 U.S.C. § 1331, "[t]he

district courts of the United States have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Plaintiff's "blocking right" claims necessarily arise under the Constitution and laws of the United States because they expressly seek to control, abridge or eliminate Defendant's right to file a bankruptcy petition authorized under 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). Plaintiff's claims cannot even be stated without referring to the federal right to file a federal bankruptcy governed exclusively by federal law.  Accordingly, an action expressly seeking to control, abridge or eliminate a federal right is inherently a federal claim, and it necessarily arises under federal law.  *See also* 28 U.S.C § 1334 (establishing original federal jurisdiction over cases "related to" bankruptcy cases).

Further, the Supreme Court has held that even state-law claims are within the federal courts' original jurisdiction when a four-part test is met:  "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Grable & Sons Metal Prods., Inc. v. Darue Engineering*, 545 U.S. 308 (2005).  Plaintiff's "blocking right" claims easily satisfy all four parts of this test.

***First***, Plaintiff's "blocking right" claims necessarily raise a federal issue because, as in *Gunn v. Minton*, Plaintiff can only succeed on its claim based on an application of federal law. *See id.* at 259.  As discussed in the Preliminary Statement, the federal courts have repeatedly held that federal law governs the enforceability of restrictions on the right to file for bankruptcy protection.  They have also held that federal law governs the enforceability of "blocking rights," including "blocking rights" in LLC agreements.  *See*, *e.g.*, *In re 3P Hightstown, LLC*, 631 B.R.

205, 211 (Bankr. D. N.J. 2021) (stating that an LLC Agreement's prohibition on bankruptcy filings without consent "may be void as contrary to public policy" and analyzing the issues under federal law); *In re Pace Industries*, Case No. 20-10927 (MFW) (Bankr. D. Del. May 5, 2020), Dkt. No. 148 at 38 (holding that, "a blocking right by a shareholder who is not a creditor is void as contrary to federal public policy that favors the constitutional right to file bankruptcy"); *In re Intervention Energy Holdings, LLC*, 553 B.R. 258 (Bankr. D. Del. 2016) (invalidating "blocking rights" in an LLC agreement based on "[t]he federal public policy…to assure access to the right of a person, including a business entity, to seek federal bankruptcy relief as authorized by the Constitution and enacted by Congress."); *Lexington Hospitality Group*, 577 B.R. 676, 682 (Bankr. E.D. Ky. 2017) (holding that, "The Company's Authority to File Bankruptcy is Controlled by Kentucky Law, but the Validity of the Bankruptcy Restrictions is a Matter of Federal Law"). *See also In re Quad-C Funding LLC*, 496 B.R. 135, 143 (Bankr. S.D.N.Y. 2013) (stating that there may be issues – which can only be federal law issues – with respect to the "validity" of clauses "that may," like Plaintiff's asserted right here, "purport to give minority equity holders a veto over a chapter 11 filing.").

**Second**, the enforceability of "blocking rights" under federal law is actually disputed here because, as in *Gunn v. Minton*, it is "the central point of dispute." *Id.* at 259. Plaintiff's Motion, and Count III and IV of its complaint, all seek to enforce a "blocking right" which Defendant disputes as invalid under federal law.

**Third**, the federal law issue here is "substantial." *Gunn v. Minton* held that an issue must not only be substantial to the parties, but must also implicate federal "interests" or be important "to the federal system as a whole." *See id.* at 262-64. There can be no question that the issue presented here is both. The courts have repeatedly held that access to bankruptcy court is a fundamental federal right, that protecting access to bankruptcy court is a key federal policy, and

that "blocking rights" and other state law restrictions on bankruptcy rights may be unenforceable because they violate federal policy.

For example, the court held in *Intervention Energy Holdings,* 553 B.R. 258, 265*,* that "[t]he federal public policy to be guarded here is to assure access to the right of a person, including a business entity, to seek federal bankruptcy relief as authorized by the Constitution and enacted by Congress. It is beyond cavil that a state cannot deny…such a right."

In *Lexington Hospitality Group,* 577 B.R. at 683, the court emphasized that "[T]here is a strong federal public policy in favor of allowing individuals and entities their right to a fresh start in bankruptcy."  And in *In re Pace Industries*, Case No. 20-10927 (MFW), Docket No. 148 at 39-40 and 42 (Bankr. D. Del. May 5, 2020), the court relied not only on the federal policy of ensuring access to bankruptcy court, but also on the requirement that bankruptcy courts consider "what is in the best interest of all":

> I think it is clear that a lack of access to the Bankruptcy Code and the Bankruptcy Courts would violate the federal public policy…to allow a debtor to file bankrupt-cy….Federal public policy allows any entity to file for bankruptcy, and it is the same regardless of who is seeking to block that filing…federal policy does require that the Court consider what is in the best interest of all.…

Thus, the federal law issue presented here is substantial, implicates federal interests, and is important to the federal bankruptcy system – mandated in Article I, Section 8 of the U.S. Constitution – as a whole.  The public importance of preserving the federal right to access the bankruptcy courts, and to preserving federal jurisdiction over attempts to weaken that right, is also made clear by the amicus brief filed by former bankruptcy judges and academics referenced above: "The viability and utility of the bankruptcy filing is a federal question…Such issues cannot be properly addressed by a state court, lest the need for a uniform system of bankruptcy be hopelessly impaired."  Brief of Amici Curiae Hon. J. Melanie L. Cyganowski, *et al.*, in Support of

Petitioners at 23, *Philip Pilevsky v. Sutton 58 Associates, LLC*, No. 20-1483 (U.S. Supreme Court April 2021). This is no mere private dispute.

**Finally**, the "blocking right" issues in this case are capable of resolution in federal court without disrupting the federal-state balance approved by Congress. The federal courts have repeatedly held, as discussed above, that corporate authorization is a question of state law, but the validity of "blocking rights" and other efforts to restrict access to bankruptcy court is a question of federal law. Consequently, deciding the "blocking right" issues here would have no negative impact on the "federal-state balance." Rather, the issue would be decided in the court where it belongs. Indeed, each of the cases cited above which adjudicates the "blocking rights" issue does so in a bankruptcy court adjudicating a motion to dismiss, typically under section 1112(b) of the Bankruptcy Code.

The cases Plaintiff relies on provide no authority to the contrary. Plaintiff assures this Court that "whether a party has authority to file a bankruptcy petition on an LLC's behalf is strictly a matter of state law." (Pl. Mem. at 2.) Yet no case actually so holds. Plaintiff cites six cases in support of their proposition at pages 2 and 6-8 of their Memorandum, but two of those cases, after addressing state law issues, proceed to address the propriety of bankruptcy filings under federal law. *See Hightstown, LLC*, 631 B.R. at 211; *Quad-C Funding*, 496 B.R. at 141.

Three more of Plaintiff's cases – *In re Pasta Bar*, *In re 477 West 142nd Street*, and *In re Avalon* – do not address federal challenges to bankruptcy filings at all, and are therefore irrelevant. The fact that the propriety of some bankruptcy filings was decided as a matter of internal corporate governance based on state law alone is neither surprising nor significant here.

Finally, Plaintiff cites *Price v. Gurney*, 324 U.S. 100 (1945), but that case merely holds that neither federal nor state law authorizes shareholders to file bankruptcy petitions on their own,

which has no direct implications for the issues in the present case.  Crucially, Plaintiff cites no case holding that the propriety of "blocking rights" is "***strictly*** a matter of state law," and research has disclosed no such case.  (*See* Pl. Mem. at 2) (emphasis added).

Tellingly, Plaintiff's Memorandum does not mention the three cases Defendant cited in its Notice of Removal, all of which discuss the validity of "blocking rights" under federal law, except in parentheticals, other than to state that they are not "binding," that *Hightstown* distinguished them, and that "[n]one involved a member's rights under an LLC."  (*See* Pl. Mem. at 8.) In fact, *Lexington Hospitality Group* concerned the "blocking rights" of a 30% LLC member, and it held that the "Bankruptcy Restrictions" which created those rights "violate federal public policy and are void."  *See Lexington Hospitality Group,* 577 B.R. at 683-84.

Similarly, *Intervention Energy Holdings,* 553 B.R. at 265, invalidated "blocking rights" asserted by an LLC member based on "[t]he federal public policy… to seek federal bankruptcy relief."  And, *In re Pace Industries*, Case No. 20-10927 (MFW) (Bankr. D. Del. May 5, 2020), like this case, concerned an equity holder.

In addition, Plaintiff fails to mention that *Hightstown* applied federal law in distinguishing Defendant's cases – the "Public Policy" section of the *Hightstown* opinion, which follows the section on "Authority to File for Bankruptcy Under the LLC Agreement," weighs "the constitutional right…to file a bankruptcy" against the "right to contract."  *In re 3P Hightstown, LLC*, 631 B.R. 205, 211-14 (Bankr. D. NJ. 2021). Accordingly, Plaintiff's assertions that Defendant's removal was "frivolous" and in "bad faith" should be considered in light of its own failure to address, or correctly describe, the relevant case law – even cases Plaintiff cited itself.

For the foregoing reasons, the "blocking right" issues raised by Plaintiff's complaint satisfy all four parts of the Supreme Court's test for federal question jurisdiction and, consequently, the

requirements for removal.  As a matter of law and policy, this case presents federal issues concerning federal rights and belongs in federal court.

## II.  THIS COURT SHOULD NOT ENJOIN OR RESTRICT DEFENDANT'S RIGHT TO SEEK BANKRUPTCY PROTECTION

To be entitled to a preliminary injunction, Plaintiff must show:  "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc*., 883 F.3d 32, 37 (2d Cir. 2018). Plaintiff cannot make any of these showings.

***First***, Plaintiff has failed to show that it risks irreparable harm.  Plaintiff relies exclusively on its state law motion papers to support its demand for an injunction, and those papers assert that Plaintiff risks irreparable harm for two reasons.  The first is that "the harm suffered consists of a deprivation of a bargained for right essential to maintaining the balance of power between the members of AREH." (Pl. State Mem. at 2.)  The second is that, "[Plaintiff] also will incur exorbitant damages as a result of the denial of its Major Decision rights, as a bankruptcy action will trigger [Plaintiff's] and its affiliates' guaranty obligations under certain loan agreements."  (*Id*.)

Plaintiff's assertions are conclusory, and they are not supported by affidavits or any other evidentiary facts.  For example, Plaintiff has provided no facts to show that it has a generalized "right to maintain the balance of power" or that this "balance" would be improperly endangered by a bankruptcy filing.  Plaintiff has also failed to show that Defendant's bankruptcy would truly trigger guarantee obligations – Plaintiff merely attaches transaction documents without providing testimonial evidence as to the circumstances in which any guarantees would be triggered.  Among other things, it is unclear whether any cure periods for Plaintiff's alleged guarantees would give Plaintiff time to move to dismiss a bankruptcy filing.  In any event, it is well established that financial harm alone is not "irreparable."

***Second***, Plaintiff has failed to show that it is likely to succeed on the merits.  A basic flaw in Plaintiff's position is that it has failed to provide, and cannot provide, evidence that it has fully performed its own obligations under the LLC Agreement it relies on.  Given that Plaintiff has flatly refused to supply further funds as the LLC Agreement requires and has attempted to participate in Defendant's management in breach of that Agreement, there are substantial questions whether Plaintiff has complied with the Agreement sufficiently that it is entitled to enforce its terms.  It is well established that a party ordinarily cannot prove that it is entitled to enforce a contract under New York law absent proof that it complied with its own contractual obligations.  *See*, *e.g.*, *Moreno-Godoy v. Kartagener*, 7 F.4th 78 (2d Cir. 2021) (an action for breach of contract under New York law requires proof of "performance by the party seeking recovery"); *Friends of Wickers Creek Archeological Site, Inc. v. Landing on the Water at Dobbs Ferry Homeowners Ass'n, Inc.*, 198 A.D.3d 726, 728 (2d Dept. 2021) (an essential element of a New York breach of contract action is "plaintiff's performance pursuant to the contract").

In addition, Plaintiff's "blocking right" claims are unlikely to succeed on the merits because they are contrary to federal public policy.  This Court should rule that Plaintiff's "blocking right" is unenforceable or, at a minimum, that Plaintiff has failed to prove facts sufficient to justify granting it a preliminary injunction.

As shown above, the federal courts have repeatedly held that "blocking rights" are unenforceable.  Creditors realized long ago that, if they could prevent their debtors from filing bankruptcy petitions or from seeking a discharge in bankruptcy, they would improve their likelihood of getting paid.  The courts stepped in to stop this over-reaching, holding that it violated the Bankruptcy Act's fundamental goals of allowing debtors a fresh start and treating all similarly situated creditors and equity holders equally, which Article I, section 8 of the Constitution directs

13

Congress to protect.  *See In re Weitzen*, 3 F. Supp. 698, 698 (S.D.N.Y. 1933) ("The agreement to waive the benefit of bankruptcy is unenforceable. To sustain a contractual obligation of this character would frustrate the object of the Bankruptcy Act…"); *Fallick v. Kehr*, 369 F.2d 899, 904 (2d Cir. 1966) ("an advance agreement to waive the benefits of the Bankruptcy Act would be void.") (dictum).  *See also In re Huang, LLC*, 275 F.3d 1173 (9th Cir. 2002) ("It is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code...This prohibition of prepetition waiver has to be the law; otherwise, astute creditors would routinely require their debtors to waive."

Creditor parties then became more sophisticated.  Instead of obtaining simple but invalid waivers of bankruptcy rights, they took minority equity positions with blocking rights.  Courts invalidated those too.  *See Lexington Hospitality Group,* 577 B.R. at 676*; In re Bay Club Partners-472, LLC*, 2014 WL 1796688 at 8 (Bankr. D. Or. May. 6, 2014). ("The bankruptcy waiver in…the [LLC] Operating Agreement is…the maneuver of an 'astute creditor' to preclude Bay Club from availing itself of the protections of the Bankruptcy Code prepetition, and it is unenforceable as such, as a matter of public policy.")  Also, the Court held in *Intervention Energy Holdings,* 553 B.R. at 265-66:

> A provision in a limited liability company governance document obtained by con-tract, the sole purpose and effect of which is to place into the hands of a single, minority equity holder the ultimate authority to eviscerate the right of that entity to seek federal bankruptcy relief, and the nature and substance of whose primary relationship with the debtor is that of creditor—not equity holder—and which owes no duty to anyone but itself in connection with an LLC's decision to seek federal bankruptcy relief, is tantamount to an absolute waiver of that right, and, even if arguably permitted by state law, is void as contrary to federal public policy.

More recently, in *In re Pace Industries*, Case No. 20-10927 (MFW) (Bankr. D. Del. May 5, 2020), the Court invalidated "blocking rights" of a preferred shareholder that was not a creditor. *Pace* held that there was no meaningful difference between a blocking creditor and a blocking

equity holder.  It also emphasized that bankruptcy is a collective proceeding, involving multiple

stakeholders, and that a core goal of federal bankruptcy policy is to ensure that the interests of

"*all*" are protected.  The Court held:

> I see no reason to conclude that a minority shareholder has any more right to block
> a bankruptcy – the constitutional right to file a bankruptcy by a corporation than a
> creditor does. Federal public policy allows any entity to file for bankruptcy, and it
> is the same regardless of who is seeking to block that filing…federal policy does
> require that the Court consider what is in the best interest of all…

*Pace* also emphasized that the "all" whose interests should be considered included creditors

and employees:

> There is no contest that the debtor needs a bankruptcy. It was in financial [straits]
> even before COVID-19 hit. With COVID-19, its plants have been closed and most
> of its employees have been furloughed. Even as states reopen, the resumption of
> operations will not happen overnight, and they will require additional liquidity.

There appears to be only one case, which Plaintiff cites, distinguishing *Pace*:  *In re 3P*

*Hightstown, LLC*, 631 B.R. 205, 211 (Bankr. D. NJ. 2021).  *Hightstown*, however, concerned very

different facts than are present here.  In *Hightstown*, the court stated, "the Debtor is a non-operating

investor in a joint venture and there are no employees or significant creditors that stand to benefit

from the bankruptcy. The record does not suggest that a bankruptcy would benefit most

stakeholders." *Id.* at 213.

In contrast, Defendant here is a vertically integrated enterprise which operates through

subsidiaries and affiliates to manage approximately twenty real properties, including construction

or renovation on those properties.  Defendant has employees and creditors, and its subsidiaries

have employees, creditors and service providers.  Also, each of the properties Defendant manages

has investors, creditors, service providers and other stakeholders including, on some occasions,

construction and maintenance workers.  The investors in the properties have approximately $150

million at stake which would be at risk if, despite capital calls, Defendant is unable to raise the

funds necessary to operate effectively.  In addition, Defendant, its subsidiaries and properties have approximately sixty employees.

Given these facts, Defendant's decision to file or not to file a bankruptcy petition would necessarily affect whether its employees and creditors are paid, whether employees and creditors of its subsidiaries and the properties it manages are paid, whether the properties it manages go into default, and whether Plaintiff or other investors will incur significant losses.  (*See* Simpson Decl. ¶¶ 8,9.)  Moreover, Plaintiff seeks to enjoin a bankruptcy now, before the full facts – and the full impact of a failure to file any necessary bankruptcy – can even be known.  Nevertheless, it is clear that this case is very different from *Hightstown*, and the Court's ruling should be guided by *Pace* instead.

For these reasons, the Court should deny Plaintiff's Motion and hold that its asserted "blocking right" is void as contrary to federal public policy.  At a minimum, the Court should hold that Plaintiff has failed to establish facts which would justify the Court in enforcing its asserted right.

*Third*, Plaintiff has failed to show, and cannot show on the current record, that the balance of hardships "decidedly" favors enforcement of Plaintiff's alleged "blocking right."  Plaintiff is only a minority, Investor Member of Defendant, with an investment obligation capped by the LLC Agreement at $3 million.  In contrast, Defendant's vertically integrated enterprise has many stakeholders, including multiple layers of employees, creditors, and service providers, and investors with approximately $150 million to lose.

Plaintiff has presented no facts from which the Court could determine that the balance of hardships favors Plaintiff.  Plaintiff may believe it would benefit from enjoining a bankruptcy, but it has submitted no genuine proof, and it is unclear how much of its loss in a hypothetical

bankruptcy would be due to its own misconduct resulting in equitable subordination.  *See* 11 U.S.C. § 510(c).

Moreover, the cost to Defendant's stakeholders of preventing a necessary bankruptcy – while difficult to calculate precisely in advance – are undeniably significant.  The sixty employees of Defendant's enterprise could be deprived of the benefit of continued employment because Defendant would be denied the opportunity to reorganize and, absent a bankruptcy, it would likely lack the funds to pay either wages going forward or wages that are overdue.  Also, if Defendant needs but cannot file for bankruptcy protection, creditors would likely be denied payment, and all stakeholders would be denied the benefit of affording the company a fresh start.  These benefits – in contrast to the benefits Plaintiff seeks to claim – are benefits that Article I, section 8 of the U.S. Constitution and the Bankruptcy Code's priority scheme seek to protect.  *See* 11 U.S.C. § 507. Moreover, if Plaintiff is granted a "blocking right" to veto any bankruptcy, there is ample reason to believe that it would ignore the Bankruptcy Code's priority scheme and favor its own interests instead.

Finally, even if Plaintiff is denied a preliminary injunction, it will retain its right to move to dismiss any bankruptcy under section 1112(b) of the Bankruptcy Code based on its "blocking right" and other grounds.  In contrast, if bankruptcy is enjoined, any bankruptcy ultimately found to be permissible would likely be too late to save Defendant, provide it with a fresh start, and preserve the rights of stakeholders other than Plaintiff.  By then, the properties Defendant manage would also likely be gone.  The balance of hardships, therefore, favors Defendant, not Plaintiff.  A preliminary injunction should be denied.

***Fourth***, granting a preliminary injunction here would be contrary to the public interest for at least four reasons:

(1) Plaintiff's preliminary injunction would elevate a single minority equity holder's interests above the public interest in, and federal policy of, encouraging corporate fresh starts.

(2) Plaintiff's preliminary injunction would elevate a single minority equity holder's interests above the interests of multiple groups of stakeholders whom the Bankruptcy Code is intended to protect.  In doing so, it would also enable an equity holder to benefit at the expense of creditors and employees, contrary to the payment priorities in the Bankruptcy Code and well-established law.

(3) Plaintiff's preliminary injunction would be contrary to the socially beneficial rule that managers have a duty to protect creditors when insolvent or in the zone of insolvency.  That rule is well established under New York law, which, Section 14.4 provides, governs the LLC Agreement.  *See*, *e.g.*, *United States Small Bus. Admin. v. Feinsod*, 347 F. Supp. 3d 147, 160 (E.D.N.Y. 2018); *Hughes v. BCI Int'l Holdings,* 452 F. Supp. 2d 290 (S.D.N.Y. 2006) (holding that creditors had standing to assert a breach of fiduciary claim against the director of an insolvent New York corporation, because even though "[a]n officer or director does not owe a fiduciary duty to the creditors of a solvent corporation, the fact of insolvency causes such a duty to arise."); *N.Y. Credit Men's Adjustment Bureau, Inc. v. Weiss*, 305 N.Y. 1, 7 (1953) ("If the corporation was insolvent at that time it is clear that defendants, as officers and directors thereof, were to be considered as though trustees of the property for the corporate creditor-beneficiaries.").  *See also North American Catholic Educational Programming Foundation v. Gheewalla*, 930 A.2d 92 (Del. 2007) (discussing managers' fiduciary duties in the "zone of insolvency" under Delaware law).

Plaintiff, in contrast, has given no assurance that it would exercise any "blocking right" subject to fiduciary duties to anyone except itself.  Moreover, New York LLC law does not ordinarily impose fiduciary duties on non-managing members, even with respect to the LLC's

other members.  *See*, *e.g.*, *Kalikow v. Shalik*, 986 N.Y.S.2d 762 (Sup. Ct. Nassau Cty. 2014).

Consequently, allowing Plaintiff to enjoin a bankruptcy would be contrary to the public interest

because it would deprive creditors of the fiduciary protection they would otherwise be entitled to

as a matter of law.

Further, at least one court has held that a "blocking right" was contrary to public policy

specifically because it placed decision-making with respect to bankruptcy filings in the hands of a

non-fiduciary.  *See In re Lake Michigan Beach Pottawattamie Resort LLC*, 547 B.R. 899 (Bankr.

N.D. Ill. 2016).  In that case, the court noted that: "The essential playbook for a successful blocking

director structure is this: the director must be subject to normal director fiduciary duties and

therefore in some circumstances vote in favor of a bankruptcy filing, even if it is not in the best

interests of the creditor that they were chosen by."  *Id.* at 913.  Because the "blocking right" at

issue was in the hands of a non-fiduciary, the court ruled that it was contrary to public policy –

seemingly both state and federal – and unenforceable.  *Id.*  For the same reason, the Court should

not enforce a "blocking right" held by a non-fiduciary here.

(4) Granting a preliminary injunction would be especially contrary to the public interest

because it would allow Plaintiff to stop any bankruptcy filing – irrespective of how the facts ultimately

develop – in advance.  The validity of "blocking rights" has normally been determined by bankruptcy

courts adjudicating motions to dismiss under section 1112(b) of the Bankruptcy Code.  In that context,

the facts concerning the circumstances and consequences of any "blocking rights" is clear, and other

stakeholders and the Office of the United States Trustee are given an opportunity to weigh in on the

issues.

Here, in contrast, Plaintiff is asking the Court to grant it an injunction after a highly expedited

preliminary hearing based on a very limited factual record even though granting the injunction, by

delaying any bankruptcy filing, would likely make any such filing too late to be beneficial.  Granting

an injunction in this way – when the issue at stake is both crucial to the public interest in facilitating corporate reorganization and appears to be of first impression in this Circuit – would do the public interest a very grave disservice. To the extent that Plaintiff has a valid "blocking right," it should be permitted to assert that right, but in the same way it has been asserted in other cases: after a bankruptcy has been filed, in a motion to dismiss under section 1112(b) of the Bankruptcy Code, based on a full factual record.

For the foregoing reasons, Plaintiff has failed to show that it risks irreparable harm, that it is likely to succeed on the merits, that the balance of hardships tips in its favor, or that the public interest favors granting the injunction it seeks. Plaintiff's Motion for a preliminary injunction enforcing its asserted "blocking right" should be denied.

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny Defendant's Motion in its entirety and grant such other and further relief as may be just and proper.

Dated: October 20, 2023

GRIFFIN LLP

By: */s/ Richard K. Milin*
Scott A. Griffin
Richard K. Milin
420 Lexington Avenue, Suite 400
New York, New York 10170
rmilin@grifflegal.com
Telephone: (646) 998-5580
Facsimile: (646) 998-8284

*Counsel for Arch Real Estate Holdings LLC*