```
                  UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK
-------------------------------:

608941 NJ INC,                 : Case No.: 23-cv-8966

                   Plaintiff, :

        v.                     :

JEFFREY SIMPSON, et al.,       : New York, New York

                  Defendants : October 27, 2023

-------------------------------:

          TRANSCRIPT OF STATUS CONFERENCE HEARING

       BEFORE THE HONORABLE ANDREW L. CARTER, JR.

              UNITED STATES DISTRICT JUDGE



APPEARANCES:

For Plaintiff:          HAYNES AND BOONE LLP
                        BY:  Richard Kanowitz, Esq.
                             Aishlinn R. Bottini, Esq.
                             Leslie C. Thorne, Esq.
                        30 Rockefeller Plaza
                        New York, New York 10012


For Defendant:          GRIFFIN HAMERSKY LLP
Arch Real Estate        BY:  Scott A. Griffin, Esq.
                             Richard K. Milin, Esq.
                        420 Lexington Avenue
                        New York, New York 10170



For Defendant:          SAM P. ISRAEL P.C.
JJ Arch LLC             BY:  Sam P. Israel, Esq.
                        32 Broadway
                        New York, New York 10004




Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

       AMM TRANSCRIPTION SERVICE - 631.334.1445
```

1          THE DEPUTY CLERK:  Good afternoon.  This
2     is Tara, Judge Carter's deputy.
3          Who just joined the call, please?
4          MR. MILIN:  Hi.  This is Richard Milin
5     from Griffin Hamersky.  I'm sorry, Griffin LLP.
6     With me is Scott Griffin, and we represent Arch Real
7     Estate.
8          THE DEPUTY CLERK:  Thank you, sir.
9          Good afternoon.  This is Tara, Judge
10    Carter's deputy.  Who just joined the call, please?
11         MR. KANOWITZ:  Yes, good afternoon.
12    Richard Kanowitz, Haynes and Boone for the
13    plaintiff.
14         THE DEPUTY CLERK:  Thank you, sir.  Will
15    you be having co-counsel joining you today?
16         MR. KANOWITZ:  I will be.  Leslie Thorne
17    of Haynes and Boone should also be on the line.
18         THE DEPUTY CLERK:  Okay.  Thank you, sir.
19         Good afternoon, this is Tara, Judge
20    Carter's deputy.  Who just joined the call, please?
21         MR. SCHWARTZ:  Yeah, this is Alan
22    Schwartz.  I'm not a party to the case.  I just
23    wanted to listen in to the hearing.
24         THE DEPUTY CLERK:  That's fine, Mr.
25    Schwartz.  If you can just place your phone on mute.

1    Thank you.

2                    MR. SCHWARTZ:  Thank you.

3                    THE DEPUTY CLERK:  Good afternoon, this

4    is Tara, Judge Carter's deputy.  Who just joined the

5    call, please?

6                    MS. BOTTINI:  Hi.  This is Aishlinn

7    Bottini of Haynes and Boone.  I represent Oak;

8    however, I won't be speaking on this conference.

9                    THE DEPUTY CLERK:  Okay.  So you're just

10   calling in to listen, ma'am?

11                   MS. BOTTINI:  Yes.

12                   THE DEPUTY CLERK:  Okay.  Great.  Thank

13   you.  If you can just place your phone on mute.

14                   MS. BOTTINI:  Absolutely.

15                   THE DEPUTY CLERK:  Good afternoon, this

16   is Tara, Judge Carter's deputy.  Who just joined the

17   call, please?

18                   THE COURT:  Hi, Tara.  It's Judge Carter.

19                   THE DEPUTY CLERK:  Hi, Judge.

20                   Good afternoon.  This is Tara, Judge

21   Carter's deputy.  Who just joined the call, please?

22                   THE LAW CLERK:  Hi, Tara.  This is Kim.

23                   THE DEPUTY CLERK:  Hi, Kim.

24                   Just want to double check to see whether

25   or not we have counsel on the phone as of yet for

1    defendant, JJ Arch?  Thank you.

2              (No verbal response.)

3              THE DEPUTY CLERK:  Good afternoon.  This

4    is Tara, Judge Carter's deputy.  Who just joined the

5    call, please.

6              MR. ISRAEL:  Sam Israel for JJ Arch and

7    Jeffrey Simpson.

8              THE DEPUTY CLERK:  Thank you, Mr. Israel.

9              Good afternoon.  This is Tara, Judge

10   Carter's deputy.  Who just joined the call, please?

11             MR. MILLER:  This is Wilson Miller with

12   Haynes and Boone.

13             THE DEPUTY CLERK:  Good afternoon.  This

14   is Tara, Judge Carter's deputy.  Who just joined the

15   call, please?

16             MR. WEINER:  This is Kevin Weiner, one of

17   the principals of 35 Oak, the plaintiff.

18             THE DEPUTY CLERK:  Great.  Thank you.

19             I do understand that we have some people

20   just dialing in to hear today's proceeding, and I

21   just ask that those individuals will place your

22   phones on mute.

23             Counsel, this telephone conference is

24   being recorded, so I ask that each time you address

25   the Court, to please state your name prior to

1    speaking, and when you are not addressing the Court,

2    to please place your phone on mute.  Thank you.

3              Civil cause for a telephone order to show

4    cause hearing for a preliminary injunction in case

5    number: 23-cv-8966; 608941 NJ Inc. v. Simpson, et

6    al.

7              Counsel, please state your appearances

8    for the plaintiff.

9              MR. KANOWITZ:  Yes.  Good afternoon, Your

10   Honor.  May it please the Court, Richard Kanowitz of

11   Haynes and Boone on behalf of the plaintiff.

12             MS. THORNE:  Leslie Thorne on behalf of

13   the plaintiff.  We're also joined by my colleagues,

14   Aishlinn Bottini and Wilson Miller, but Mr. Kanowitz

15   will be offering argument today.

16             THE DEPUTY CLERK:  Thank you.

17             And for defendants, JJ Arch and Simpson?

18             MR. ISRAEL:  Sam Israel for JJ Arch, LLC,

19   and Jeffrey Simpson.

20             THE DEPUTY CLERK:  And for defendant,

21   Arch Real Estate?

22             MR. MILIN:  Richard Milin of Griffin LLP.

23   And with me is Scott Griffin, representing, as you

24   said, Arch Real Estate Holdings.

25             THE DEPUTY CLERK:  Thank you.

```
 1                    THE COURT:  Okay.  Good afternoon.

 2                    We're here today to discuss plaintiff

 3     Oak's, request to remand this action for lack of

 4     jurisdiction, and to seek a preliminary injunction

 5     in joining defendants during the pendency of this

 6     action from filing for bankruptcy.

 7                    I want to get a clearer sense of where we

 8     are in terms of the lay of the land here.  In the

 9     party's most recent submissions, they seem to be, I

10     guess, in agreement that the issues of plaintiff's

11     access to defendant, A-R-E-H's documents and

12     information is moot, as well as the issue of

13     supplemental jurisdiction.

14                    But let me hear more from the parties on

15     that, starting with plaintiff's counsel.

16                    MR. KANOWITZ:  Yes, Your Honor.  Again,

17     Richard Kanowitz, Haynes and Boone for the

18     plaintiff.  Thank you very much.

19                    I don't believe it's per se moot.  You

20     know, the lower court made clear through the hearing

21     transcript that's before Your Honor, that an order

22     will be entered granting access to the books and

23     records.  So to the extent that we get that order,

24     and to the extent that we get cooperation in

25     furtherance of that order, yes, I believe that we
```

1    could argue that it is moot.

2              However, we believe that we're going to

3    unfortunately need guardrails and court assistance

4    with that.  So what I would say is we believe that

5    if Your Honor remands it, we'll be before the lower

6    court on these issues, and we don't need to have it

7    here in federal court if Your Honor holds on to

8    jurisdiction.

9              THE COURT:  And let me just ask before I

10   hear from the defendants, the "it" that you're

11   talking about remanding, is there an agreement

12   between the parties that Counts 1 and 2 of the

13   complaint should be remanded or no?  Is there no

14   agreement on that?

15             MR. KANOWITZ:  I would say I think this

16   is ships passing in the night.  Obviously, we'd be

17   happy for all the things that Your Honor is -- will

18   not hold on to jurisdiction, if you so desire to

19   hold on to certain things, be remanded.  There is,

20   as you could see from the transcript, ancillary

21   proceedings that are between the various different

22   parties at JJ Arch that percolated up to the lower

23   court's rulings from the other day.

24             THE COURT:  Okay.  Let me hear from

25   defendant, JJ Arch, on this.

1          MR. ISRAEL:  Your Honor, my understanding
2    is that we didn't agree that it would be remanded.
3    So I think until you rule on it and it would be
4    remanded, it's before you.
5          THE COURT:  Okay.  And let me hear from
6    defendant, Simpson.
7          MR. ISRAEL:  Same thing, Your Honor, I
8    represent both Jeffrey Simpson and JJ Arch, LLC.
9          THE COURT:  Okay.  And what about
10   defendant, AREH?
11         MR. MILIN:  Your Honor, it's our position
12   that the issue is moot, that a ruling was issued by
13   the state court, which we intend to comply with.
14   The issue was not briefed in plaintiff's reply
15   brief.  They did not contend that the Court should
16   enter an order of remand.
17         As far as I'm concerned, I think, Your
18   Honor, that the issue is moot, and that accordingly,
19   no remand should be issued.
20         THE COURT:  Okay.  Let me get a clearer
21   sense of where we are before we start delving into
22   some of these other legal issues.
23         From plaintiff's perspective, what is the
24   end goal here?  I know what you're looking for in
25   this particular litigation, but what is the end

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    goal?  Have the parties had any sort of settlement
2    discussions at all broken down?  Are those not
3    started?  Where are we going with this?
4            MR. KANOWITZ:  Excellent question, Your
5    Honor.  And, frankly, as a bankruptcy lawyer for 30
6    years, when I come into these types of situations,
7    that's the first thing I ask.  How do we maximize
8    value, right, for all constituency?  And the answer
9    is, my understanding is that Mr. Simpson refuses to
10   abide by his fiduciary duties -- and we don't need
11   to go into the details why or whatever -- and that
12   has prompted the litigation, not only litigation by
13   the plaintiff, but litigation by his co-member in
14   the JJ Arch entity.
15           So we have a situation, unfortunately,
16   where instead of business being conducted in the
17   normal course, where full discovery and transparency
18   is made to partners so that they could make
19   decisions about things.  We're in a litigation
20   posture.  We're in a litigation mode.  And that is
21   not helpful to anybody's interest.
22           Our concern, obviously, in bringing this
23   action was based on the statements made.  The key
24   issue here is that the two members of Arch need to
25   agree on major decisions, whether it be financing,

```
 1    whether it be bankruptcy, whether it be something
 2    else.  And having done bankruptcy for 30 years, Your
 3    Honor, both on company side and creditor side, I
 4    could just tell you bankruptcy is not a magic
 5    bullet.  It costs a lot of money to start up a
 6    proceeding.  It costs a lot of money to maintain the
 7    proceeding.  It has to have an end game with a
 8    strategic goal, whether it's a sale, whether it's a
 9    reorganized entity.  None of that is being explored
10    here.
11              Instead, unfortunately, what we have --
12    and again, I won't go into the details and the
13    merits and the pointing fingers because the record
14    is before you in connection with the lower court, as
15    well as why you issued a TRO, and why we're here on
16    the preliminary injunction -- that instead of
17    working together, instead of having transparency,
18    instead of figuring out the best path forward to
19    maximize value, again, we're at odds.
20              And we're at odds because we believe that
21    the strategic tool of bankruptcy is being used as a
22    weapon.  Even though the operating agreement under
23    New York law requires consent.  Even though the
24    bankruptcy rules under -- you just have to look at
25    local Bankruptcy Rule 1074 -- requires an authorized
```

1    filing by consent.  It's explicit.

2              So instead of having that cooperation,

3    that workable solution where partners sit down,

4    explore options, figure out how are we going to fund

5    things, figure out the best strategy.  Maybe

6    bankruptcy is, maybe it's not.  We're not

7    foreclosing it.  But to have bankruptcy held as, I'm

8    going to burn down the house if you don't pay, is

9    not a productive way to maximize value.

10             So from our perspective, that is the

11   genesis of the litigation, both here in front of

12   Your Honor, and also in the state court.  Not only,

13   again, between the plaintiff and defendants, but the

14   defendants and other managing partners of their own.

15   And that is before the lower court, and that is

16   reflected in the transcript that you saw the other

17   day.

18             So I'll stop there and say, we look

19   forward to working with our partners.  We just have

20   to have information, and we have to have, what I

21   would say is a strategic discussion and not threats.

22             THE COURT:  I guess what I'm -- I don't

23   mean to circle back because that was a lot that you

24   stated about the history of this case and some of

25   the ill will between the parties.  But, I guess, I

```
 1   go back to, what is it that you want?  Like putting
 2   aside the preliminary injunction, and putting aside
 3   this -- it seems that what you're saying, but I
 4   don't want to put words in your mouth, is that you
 5   want the records.  It seems like you're getting
 6   those, and you want to have discussions with Mr.
 7   Simpson.
 8           Is there something else that I'm missing?
 9           MR. KANOWITZ:  I don't believe so.  We
10   want compliance with the operating agreement, of
11   course.  And so absent protection by Your Honor or
12   the lower court, we feel that we won't get
13   cooperation, we won't have productive discussions.
14   And, in fact, a decision without our consent will be
15   made in violation.  So, yes, Your Honor, our goal is
16   to maximize value.
17           And if we need to have Your Honor
18   issue -- again, if Your Honor holds onto this
19   case -- a preliminary injunction while we discuss
20   among the partners the best path forward, then that
21   will be our request.  To be protected while these
22   discussions and this situation unfolds.
23           THE COURT:  And this lack of
24   communication between the partners, it seems that
25   you're saying that Mr. Simpson has refused to speak
```

1    or communicate, at least first.

2            Is this a situation in which the other

3    partners could communicate what they want to Mr.

4    Simpson to start this sort of cooperative agreement?

5    Or is this like a 7th grade dance, and no one wants

6    to go first?  What are we talking about here?

7            MR. KANOWITZ:  I believe the record is

8    clear with communications back and forth about some

9    of the matters.  But when you have a fiduciary

10    managing member, that member has to be the punctilio

11    of honor here.  He has to act as a fiduciary.  And,

12    unfortunately, that has broken down.  Whether right

13    or wrong, we need a path forward.  Again, where

14    parties are talking to one another, not under the

15    threat of bankruptcy, but strategic alternatives,

16    including what to fund and what not to fund, needs

17    to be discussed in a constructive manner.

18            And I think the only way we get there,

19    unfortunately, Your Honor, is through court orders

20    in the first instance, protecting the plaintiff's

21    rights, and then have the parties recognize that the

22    agreements will be enforced.  And then move forward

23    hand-in-hand, hopefully, to solve these problems.

24            And if bankruptcy is an option, the

25    plaintiff will consider that, but not under the

```
 1   threat of burning down the house because the
 2   plaintiff will not fund unclear demands about what
 3   needs to be funded.
 4            THE COURT:  Let me hear from defendant,
 5   AREH.  What is your end goal here?
 6            MR. MILIN:  Your Honor, our end goal is
 7   to save the company, to protect the stakeholders,
 8   and to make things work out.  What you've just
 9   heard, Your Honor, there's so much that we disagree
10   with that it's hard to go through all of it.  But
11   certainly, we do not agree that there's been a
12   breach of fiduciary duty here.  And it's certainly
13   untrue to suggest that we wouldn't talk.
14            When my firm was first engaged, we called
15   Haynes and Boone and we said, what do you want?
16   This is the kind of dispute in which an eye for an
17   eye can make the whole world blind.  We don't want
18   that to happen.  Let us move forward together, and
19   let's start with the documents, because if you can't
20   work that out, you're nuts.  They promised to get
21   back to us, Your Honor.  They didn't.
22            Your Honor, we are happy to try to work
23   something out.  And we should also add that in state
24   court, plaintiff joined an action in which Oak is
25   not a party and sought an order appointing a
```

1    receiver, sought an order stopping a bankruptcy,

2    sought an order with numerous provisions.  We

3    responded.  It's on the record with a marked-up

4    order that said, no, you can't take away the right

5    to file bankruptcy if that is in the interest of

6    stakeholders.  It's not a two-party dispute.  It's a

7    multi-party dispute.  There's federal policy in the

8    background.  You have to retain that.

9            But we said expressly in our

10   communications with the Court and in our marked-up

11   order, that we want to give them information they

12   need so they will stop being mistrustful and stop

13   accusing Mr. Simpson of breach of fiduciary duty.

14   And we are willing to live by reasonable guardrails

15   in order to build their trust.  But the result has

16   been extraordinary litigation activity.

17           So what's the end goal?  What they

18   stated, but which isn't happening, and which we'd

19   like to happen.

20           THE COURT:  Okay.  Let me hear from

21   defendant, JJ Arch and Simpson.  What is the end

22   goal here?

23           MR. ISRAEL:  Your Honor, we agree with

24   what was just said by ACEH and take issue with many

25   of the statements that were just made about how Mr.

1    Simpson is allegedly breaching fiduciary duties.  We

2    don't agree with any of that.  And we're more than

3    happy to cooperate and have fruitful discussions

4    towards resolving the issues that are before the

5    parties.

6              THE COURT:  Okay.  Let's move to the

7    issue of jurisdiction.  I understand defendant's

8    views as it relates to Count 3 and 4 of the

9    complaint, but what is the defendant's view as to my

10   jurisdiction over Counts 1 and 2?

11             Let me hear from AREH first.

12             MR. MILIN:  First, Your Honor, that could

13   only be supplemental jurisdiction.  Counts 1 and 2

14   are the counts for books and records.  As I recall,

15   they would only be before Your Honor on supplemental

16   jurisdiction.  And as we've said, we think it's

17   moot.  It's being resolved by the state court right

18   now in another action.

19             So a remand really wouldn't serve much

20   purpose.  But, certainly, we wouldn't expect Your

21   Honor to rule on it today or anytime soon.

22             THE COURT:  Well, I guess I'm a little

23   bit confused.  If you're saying it's potentially

24   moot or the state court is ruling on it, why should

25   I hold on to Counts 1 and 2?

1          MR. MILIN:  Understood, Your Honor.  The
2    question is whether Your Honor would prefer to hold
3    on to those counts as potentially within
4    supplemental jurisdiction or -- but currently moot,
5    or remand them pending further developments.  Either
6    one would be acceptable to us.
7          THE COURT:  Okay.  Let me hear from
8    defendant, JJ Arch and Simpson on this.
9          MR. ISRAEL:  Your Honor, we agree with
10   what was just said by ACEH.
11         THE COURT:  Okay.  Well, let me hear
12   from -- does plaintiff have anything to add on this
13   issue?
14         MR. KANOWITZ:  Your Honor, you should
15   remand them.  If the state court is dealing with all
16   the discovery books and records issues, then we'll
17   be before the state court.
18         THE COURT:  Okay.  Let's turn to Counts 3
19   and 4.  I directed the parties to analyze the
20   jurisdictional issue under the test set forth in
21   *Grable & Sons*, and *Gunn v. Minton*.
22         Defendants argue that the issue of
23   impending bankruptcy is necessarily raised in this
24   case.  I'm still considering that issue, but I'm, at
25   this point, inclined to agree with the defendants.

1        But let me hear from the plaintiffs as to
2   why the Grable/Gunn test is not satisfied in this
3   case as it relates to Counts 3 and 4 of the
4   complaint.
5        MR. KANOWITZ:  Yes, Your Honor.  First,
6   there is no federal issue.  This is a state law
7   corporate governance matter.  End of story.  You
8   just need to look at the bankruptcy rule again.
9   1074-1, Southern District of New York.  To be able
10  to have an authorized bankruptcy filing, you have to
11  comply with state law.  There is no federal overlay
12  here, Your Honor.
13       We are seeking to enforce the operating
14  agreement under New York law to the extent that the
15  defendants believe they have a defense, i.e., that
16  somehow the operating agreement needs to be
17  rewritten because it violates public policy, for
18  whatever reason, on the majority decision, okay.
19  That is a defense that does not get raised in
20  connection with Your Honor's jurisdiction.  A
21  defense cannot be a basis for jurisdiction.
22       So we go through all of the elements for
23  the analysis, including the well-pled complaint
24  rule, and demonstrate to Your Honor that there is no
25  federal overlay here.  I understand the appeal for

1    it because when you talk about bankruptcy, you're

2    talking about Chapter 11 and Chapter 7.  I would

3    just point out, Your Honor, that the bankruptcy

4    action, as contained in the operating agreement on

5    major decisions also indicates state law remedies,

6    not just a Federal Chapter 11 or Chapter 7

7    proceeding, but also state law remedies.

8            So clearly, Your Honor, on -- that type

9    of bankruptcy action wouldn't have a federal

10   jurisdictional policy.  So what I think the

11   defendants are doing is trying to say there's

12   something out there in the ether, and we find the

13   operating agreement problematic; and, therefore, we

14   have a defense to the extent that you should try to

15   stop us under state law.  But by you enforcing the

16   agreement under state law, that's not a federal

17   question.  There's no jurisdiction whatsoever.  We

18   explained the various different cases that go into

19   this issue, your Honor.

20           This is, again, corporate governance.

21   The first thing you do when you're a counsel to a

22   company is you figure out who is authorized to speak

23   on behalf of that company.  And you just need to

24   look at, through the cases that we cite, your Honor,

25   wherever this issue has been decided in connection

1  with supermajority or majority vote, or any of those

2  type of actions under state law.  The bankruptcy

3  courts and the district courts and the Supreme Court

4  say, look to state law.  It's not a federal issue.

5           So from our perspective, we meet all the

6  elements of every test to demonstrate that there's

7  no federal issue in connection with what we're

8  seeking in our complaint.

9           Again, at best they raise some sort of

10  public policy as a defense to rewrite the state law

11  agreement that will be enforced in accordance with

12  state law.

13           And to be actually straight and very

14  clear, Your Honor, what would happen if they

15  violated the state law agreement is a couple of

16  things.

17           First, we would move in the bankruptcy

18  court to dismiss it as an unauthorized filing.  You

19  don't get to file bankruptcy, you have to be

20  authorized to file bankruptcy, and the corporate

21  documents speak for that.  So we'd move to dismiss.

22  To the extent that we wouldn't get dismissal, we

23  would move, in the alternative, for a Chapter 11

24  trustee, for all the reasons we talk about, about

25  breach of fiduciary duty, all those type of things.

1          The third thing we potentially would do
2     is seek sanctions for filing a bankruptcy that's
3     unauthorized, in violation of the federal rules, the
4     bankruptcy rules, et cetera.  And to the extent that
5     anyone makes a false oath about the authority to
6     file bankruptcy, okay, that could potentially be a
7     bankruptcy crime.

8          So these are very serious matters.  And
9     the reason why the operating agreement is structured
10    the way they are is because that was the bargain for
11    right, but it's bargain for right corporate
12    governance under state law.  There is no federal
13    touch point as to either our complaint or their
14    defense which gives this Court jurisdiction.

15         And that's key, Your Honor, right.
16    Because even if they're right, even if they could
17    convince the State Court somehow that the
18    interpretation, and the clear and unambiguous state
19    court's operating agreement shouldn't be enforced
20    because there's a prohibition somehow or a public
21    policy issue, that's a defense that doesn't get
22    determined by Your Honor to hold on to those counts
23    that seek enforcement of the state court action.
24    I'll stop there.

25              THE COURT:  Okay.  Let me just ask you

 1  something, but again, the complaint is a little bit
 2  more directive than that.  The complaint in Count 3
 3  is asking for injunctive relief, and is asking to
 4  prevent defendants from filing for bankruptcy.
 5          So let me ask you this, I think I
 6  understand your position between -- there is a
 7  difference between a state law and whether or not a
 8  contract has been entered into under state law,
 9  whether there has been offer acceptance,
10  consideration, damages and the like versus the
11  enforceability of that contract under state law or
12  under federal law.
13          And I think your position is that
14  enforceability is a defense.  I'm not sure if that's
15  necessarily right, but even if it is right, the way
16  that that complaint is stated, because you are
17  asking me, you're asking the state court before this
18  case got removed to enforce that agreement.  I'm not
19  sure that that's a defense in that context.
20          I'll give you a chance to address that.
21          MR. KANOWITZ:  Well, it's seeking
22  declaratory relief to set out the parties' rights
23  and responsibilities under state law and that
24  operating agreement.  And we need the preliminary
25  injunction because defendants have basically said,

1    we're going to repudiate that agreement, we're not
2    going to abide by it.  And that's a problem for us.
3    And their argument is, we don't have to abide by the
4    state law, we could do what we want.  Obviously,
5    that's not appropriate, but putting that aside, and
6    they're saying they could do it because there's some
7    sort of federal idea out there.

8             And by the way, Judge, there's no
9    bankruptcy rule that permits this, meaning that they
10   could just initiate an operating agreement that
11   requires consent for bankruptcy.  Remember, this is
12   not a prohibition against bankruptcy.  This is not a
13   restriction.  You can't file bankruptcy.

14            The company itself can file bankruptcy.
15   But to get into bankruptcy, it's under the state law
16   agreement.  And when we understand from the e-mails
17   and from the threats that if you don't do what I
18   want -- okay, I'm just paraphrasing what the e-mails
19   say -- I am going to file bankruptcy irrespective of
20   what the contract says.  That is the basis for our
21   preliminary injunction interest, which is why we
22   phrase it, we need to stop them from violating the
23   state law agreement for whatever reason.

24            And the majority decision is not just
25   about bankruptcy.  It's a whole host of other

1    business items.  So you have the managing member who

2    owes fiduciary duties, who has day-to-day

3    operations.  But when it comes to certain things,

4    i.e., bankruptcy, there has to be consent for the

5    company itself to file bankruptcy.  And if the

6    defendants believe that's not how it works, that's a

7    defense.

8              THE COURT:  Well, let me ask plaintiff's

9    counsel something, then I'll hear from defendants.

10             Certainly, the Second Circuit case that

11   you cited is a case that stands for the proposition

12   that generally these sorts of agreements, in

13   general, can be enforceable, but do you have a

14   single case that indicates that a party may be

15   prevented from filing for bankruptcy in this

16   context?  Let me just rephrase that and make this a

17   little clearer.

18             It's one thing to say that someone lacks

19   authority to file bankruptcy.  If some random

20   individual that has no connection with Sears says, I

21   think Sears isn't doing well and I want to file for

22   bankruptcy on Sears' behalf, someone certainly could

23   move to dismiss the bankruptcy petition because that

24   person didn't have authority to do that.  And

25   bankruptcy court would entertain that and probably

1   grant that motion.

2          It's a different context when what is

3   preventing someone ostensibly from filing for

4   bankruptcy is this sort of agreement.  So these

5   sorts of agreements have been held to be okay in a

6   non-bankruptcy context.

7          Do you have any cases in which this sort

8   of agreement was enforced in the bankruptcy context?

9          MR. KANOWITZ:  Yes, Your Honor.  Take a

10  look at *Pasta Bar by Scotto*.  It's exactly on point.

11  That case was an unauthorized filing because there

12  was not supermajority under the operating agreement,

13  New York state law, and the bankruptcy case was

14  dismissed for an unauthorized filing.

15         Now, of course, we never want to get

16  there, Your Honor, because the harm that will happen

17  to plaintiff if we allow the defendant to go and

18  ignore the agreement.  But that's why we need the

19  preliminary injunction.  You also could take a look

20  at *In Re: 477 West 142nd Street Housing Development*.

21  Same idea.

22         And the construct there where a voluntary

23  petition for bankruptcy is filed on behalf of a

24  corporation, the bankruptcy court does not acquire

25  jurisdiction unless those purporting to act for the

1    corporation have authority under local law to

2    institute the proceedings.  Including also, Your

3    Honor, we cited the Supreme Court case that talks

4    about state law controls.

5            The issue again, Your Honor,

6    unfortunately in the bankruptcy setting is that once

7    there is an unauthorized filing, then the party in

8    interest who's harmed has to do something.  That's

9    not the way it should go.  Fiduciaries need to abide

10   by their agreements.  Fiduciaries need to also take

11   into consideration what their obligations are.  And

12   the obligation here under New York state law, that's

13   an enforceable contract is to have consent to file

14   the bankruptcy.

15            And so what I would say in connection

16   with this is that there is no federal right here.

17   All the cases point to prohibiting, under New York

18   state law, these type of actions.  The only cases

19   out there that talk about what the defendants want

20   to do, and there's some federal right, is when a

21   lender or some other creditor tries to get a waiver

22   from a company to file bankruptcy.  That's not the

23   case here.  We're not talking about a waiver.  The

24   company could file bankruptcy.

25            The problem for the defendants is the

1    company has to get consent to be able to be an

2    authorized filing.  Every single place where you

3    look at upholds that.  And, in fact, again, maybe

4    I'll chirp on it a little more.  If you look at

5    local bankruptcy rule 1074-1, if you look at the

6    model forms that are promulgated to file bankruptcy,

7    in the first instance, your Honor, it must be an

8    authorized filing.  And local bankruptcy rule

9    requires that the partners in a partnership consent,

10   or in a corporation be duly authorized by the board

11   of directors.

12           We're not going to have that here.  We

13   cannot have a managing member disregard obligations

14   under the operating room and file bankruptcy.

15   Otherwise, like I said, there'll be actions to

16   undertake by the plaintiff, unfortunately including

17   but not limited to, seeking dismissal, seeking

18   appointment of Chapter 11 trustee, seeking

19   sanctions, potential criminal referral out for

20   violating, for saying that they have the authority

21   when clearly everyone knows that they don't.

22           THE COURT:  Okay.  Let me hear from

23   defendant, AREH, on this.

24           MR. MILIN:  Thank you, Your Honor.  Once

25   again, there's a lot there, and I would like to

 1    address to the extent I can.  Well, all if I can,

 2    and as much as possible.

 3            First, just a couple of fact issues to

 4    get out of the way.  Their complaint actually talks

 5    about Oak's power to veto a bankruptcy in paragraph

 6    55.  So I don't think it's quite as benign as we

 7    just heard.  Also picking up on something that Your

 8    Honor said, this case is utterly unprecedented.

 9    Utterly unprecedented.  They cite no case in joining

10    a bankruptcy filing in advance, not in State Court,

11    not in Federal Court, not in Bankruptcy Court, not

12    in any court.

13            They cite no State Court case which

14    decided whether an LLC member's right to veto a

15    bankruptcy was valid.  All of the relevant cases

16    were in federal or bankruptcy court.  Your Honor,

17    Oak's reply cites only two state court cases; *Ronan*

18    and *2207 Pavilion*.  And even the word "bankruptcy"

19    doesn't appear in either one.  And they cite no case

20    holding, as they've just tried to tell Your Honor,

21    that federal policy concerns about blocking rights

22    once raised, were irrelevant.

23            Many cases hold, as our brief shows, that

24    blocking rights must be evaluated in light of

25    federal policy.  The cases say, first you look at

1    state law authorization, then you look at federal
2    authorization.  The cases they cite *Quad-C* and
3    *Hightstown*, which I believe both have dropped out of
4    their reply, both follow exactly that analysis.
5    Plus, they're the cases we cited; *In Re: Lexington*
6    *Hospital*, *Intervention Energy*, *Pace*, all of those
7    cases say there are two levels here.  There's state
8    law, there's federal law.

9                First you look at whether a claim is
10   valid under state law, and that is where the
11   bankruptcy rule that was just cited to us comes in.
12   But your Honor, you cannot deny -- they cannot deny
13   that there's a federal overlay which appears in like
14   ten cases.  So, yes, federal law is the essence of
15   the claim asserted here.

16               Oh, and by the way, I should add that the
17   Pasta Bar case that they just relied on doesn't
18   address any federal issue at all.  And what's more,
19   just to be sure we weren't misleading the Court, we
20   checked the underlying briefs.  No federal issue was
21   raised in that case.  The fact that it wasn't raised
22   doesn't show that there was no issue.  They didn't
23   raise the issue and have the Court say no.  They
24   didn't raise the issue.  And accordingly, the Court
25   didn't address it.  It's not a ruling if a Court

1     doesn't address an issue, and it doesn't show
2     whether federal policy is relevant or not.  So
3     that's some of what they said.
4          We've also shown, Your Honor, that
5     jurisdiction does exist in the federal court under
6     Gunn/Grable that the well-pleaded complaint rule,
7     which the other side relies on, doesn't apply here
8     because the Second Circuit, squarely held a month
9     ago that it was an exception.
10         And we also have a case to cite for Your
11    Honor, which I'll find in a moment.  Oh, yes.  *New*
12    *York versus International Joint Commission*.  It's a
13    Western District of New York case.  It holds that a
14    state law claim could be removed based on a federal
15    FSIA, the Federal Sovereign Immunity Act, defense
16    notwithstanding the well-pleaded complaint rule.
17    That's 599 F.Supp 3d 146.
18         So first of all, it's our position, as
19    Your Honor knows, that the right that they seek to
20    assert is inherently a federal right.  It's the
21    right to file a bankruptcy.  It's recognized as a
22    constitutional right in several cases.  It's, at a
23    minimum, a constitutionally-mandated right, and they
24    seek to exercise control over that right.
25         Indeed, today, they've tried to downplay

1    the veto aspect of what they're asking for and say,

2    well, we just want to control it.  But controlling

3    the federal right to file a bankruptcy is inherently

4    a federal issue.

5              What's more, we've cited the Nasdaq case

6    to Your Honor in our letter, which says that because

7    they've asked for a declaratory judgment, the Second

8    Circuit analyzes that as if the parties were

9    reversed, and as if the question were what would

10   happen if the party against whom a declaration is

11   sought did what it wanted to do?  Would that be

12   within federal jurisdiction?  Because we don't want

13   parties to be able to stop a legitimate federal

14   filing by presenting it in a declaratory judgment as

15   a state law issue.

16             So here we think that under *Nasdaq*, the

17   question before Your Honor is if we wanted to file a

18   bankruptcy, would that be a federal right?  And it

19   clearly would.  And what's more, I'm sure they'd

20   say, oh, you got to look at the contracts, it's

21   still state law.  It's not.  Because the point of

22   the Nasdaq rule is that the parties trying to stop

23   federal jurisdiction by artfully pleading a state

24   law claim should not be able to dictate what is

25   truly at issue.  And it's clear what's truly at

1   issue here is the federal right to file a

2   bankruptcy.

3         And in addition to those arguments, as

4   Your Honor knows, we've argued that the *Gunn* and

5   *Grable* test is satisfied here, both because federal

6   law is inherent in the issue before the Court, as

7   the many cases I've just cited hold, the *Pace* case,

8   the *Hightstown* case, the *Quad-C* case and on and on.

9         And I can go through the rest of the

10  requirements of *Gunn* and *Grable* if Your Honor would

11  like, but I think that covers most of what was said

12  so far.

13        THE COURT:  Okay.  Let me hear from

14  defendant, *JJ Arch* and Simpson.

15        MR. ISRAEL:  Your Honor, we agree with

16  what was just said.  I mean, to our mind, the

17  validity of the bankruptcy restrictions is a matter

18  of federal law.  We cited cases on that point, and I

19  think it's sophistry to try to get beyond that.  It

20  seems to me that it's pretty clear that this is

21  something over which the federal court has

22  jurisdiction.  And we satisfy -- or the *Gunn* and

23  *Grable* tests are satisfied, and it really isn't a

24  close call.

25        THE COURT:  Okay.  I'll hear if there's

AMM TRANSCRIPTION SERVICE - 631.334.1445

1   anything else from plaintiff on this, and then we'll

2   move on to the issue of preliminary injunction.

3           Anything else from plaintiff on that?

4           MR. KANOWITZ:  Yes, your honor.

5           The law is clear.  In *Wechsler v. Hunt*

6   *Health*, it's 216 F.Supp. 2nd 347, public policy

7   objections to enforcement of contracts is an

8   affirmative defense.

9           Like I said earlier, they don't get

10  federal jurisdiction on defenses, okay.  If they

11  wanted to come to court and plead to stop us from

12  enforcing the contract because of some sort of

13  public policy, you'd still interpret the contract.

14  It's the contract, contract, contract.  That decides

15  who gets to speak for the corporation.

16          Again, this is not about filing

17  bankruptcy or not filing bankruptcy.  It's who

18  speaks for the corporation.  That is not a federal

19  determination.  They want to be able to file

20  bankruptcy, and then let us undo that, unscramble

21  that egg.  That's not how this works.  And that's

22  not how the cases allow.

23          And, in fact, if you look through the

24  cases we cited, and even look at through their cases

25  that talk about these issues, okay, this public

1   policy idea doesn't come into play under the

2   bankruptcy code, bankruptcy rules, et cetera, until

3   there's an authorized filing.  The authorization is

4   under state law, and their defense to this of

5   federal law, i.e., the bankruptcy code is a defense

6   that this Court doesn't have jurisdiction over

7   because you shouldn't first look at it.  You should

8   look at the complaint that we're seeking, which is

9   to enforce our state law rights.

10          THE COURT:  Okay.  Let's move on to the

11  issue of preliminary injunction.

12          Let me hear from plaintiff more in terms

13  of irreparable harm.  You indicated that if the

14  injunction is not granted, and if the defendants

15  move, file for bankruptcy, you could file a motion

16  to dismiss in bankruptcy court.  I know that

17  wouldn't be ideal, but how is that irreparable harm?

18          MR. KANOWITZ:  Well, a couple of things.

19          One, you're vitiating the bargain for

20  state court rights.  What basis is that to do?  This

21  was an LLC agreement where two members agreed, one

22  would be the managing member, one would invest

23  money.  What's the basis to destroy that?  That's

24  what they're asking, and that's the problem.

25          And there are cases that we cited that we

1   could go through that demonstrate that, for purposes

2   of a preliminary injunction, that's exactly what

3   gets enjoined, destruction of the parties' rights

4   under those agreements.  So that's one issue.

5         Two, bankruptcy again, it's a strategic

6   tool.  It unleashes a lot of problems, including

7   cross defaults and guarantees.  And as we put in

8   there, a lot of money is at stake.  So while Mr.

9   Simpson could say, I'm going to burn the house down,

10   what's going to potentially happen is that an

11   unauthorized filing will cause the plaintiffs

12   hundreds of millions of dollars at issue because

13   potentially, if not exactly, on guarantees of

14   obligations to lenders, they will become due and

15   payable.  That is not what's happening yet.

16         So the way we look at this situation is

17   if Your Honor kept a preliminary injunction in

18   effect, if you take jurisdiction, again, assuming

19   you take jurisdiction, there is no harm.  We could

20   try to work out our situation with our creditors,

21   even among the partners here, but nobody would be

22   able to burn the house down.  And that's what

23   they're really trying to do.  They want to utilize

24   the threat of bankruptcy to cause the harm of

25   vitiating contract rights, inappropriate, and

1  causing economic harm to the plaintiffs.  Again, not
2  appropriate.
3          So we are harmed in multiple different
4  ways on a bankruptcy filing.  And a preliminary
5  injunction stays that impact.  And what are we going
6  to sue them for; $400 million, because of an
7  unauthorized bankruptcy filing?  How are we going to
8  ever collect that?  Mr. Simpson doesn't have that
9  money.  We're the primary investor.  We're the
10  primary economic beneficiary of this, I would say,
11  interwoven organization.
12          So it's real easy for the managing member
13  to breach their fiduciary duty and say, yeah, you
14  didn't get me what I wanted, I'm filing bankruptcy
15  unauthorized, come and get me.  That's just not the
16  way business should operate, and that's not what the
17  laws provide.
18          So we would say you should issue the
19  preliminary injunction, maintain the status quo,
20  because if not, we are irreparably harmed by
21  destruction of our contract rights and destruction
22  of our economic rights in connection with this
23  business.
24          THE COURT:  Okay.  Let me just ask
25  plaintiff this.  If not for this provision in the

1    contract between the parties, would you agree that

2    the defendants would have a right, an unfettered

3    right to file for bankruptcy?

4            MR. KANOWITZ:  No, there's no such thing

5    as unfettered right.  If the agreement was silent,

6    okay, you still have to have an authorized filing.

7    The state law would then supplement what the parties

8    didn't agree.  And by the way, I've had many

9    situations where it is silent, and you then turn to

10   your fiduciary duties and say, what is in the best

11   interest of all stakeholders?  And you then could

12   make a determination to file bankruptcy because it

13   was authorized.

14           This agreement basically said the

15   corporation can file bankruptcy under these

16   circumstances.  And there's nothing.  Nothing about

17   that issue that's violation of federal law, of

18   federal policy.  So the answer is unfettered, not

19   unfettered.  You have to have a basis to file

20   bankruptcy.  A solvent company with no creditors

21   can't file bankruptcy.  In fact, the *Johnson &*

22   *Johnson LTL* case just got dismissed for that very

23   purpose, right, where the Court, the Third Circuit

24   Court of Appeals basically said, well, Johnson &

25   Johnson, you're going to pay all these asbestos and

1    talc issues, all these torts.  There's no purpose

2    for bankruptcy.

3            So the answer is it's a little bit more

4    complex, but it has to be an authorized filing.

5    Step one, is it authorized?  And that's a state law

6    question.

7            THE COURT:  Well, let me rephrase the

8    question.  Maybe this is splitting hairs, but would

9    you agree that they would have a right, an

10   unfettered right to file a bankruptcy petition, but

11   not an unfettered right to keep that petition in

12   bankruptcy court if someone moved to dismiss it?  Or

13   if the bankruptcy court on its own decided to

14   dismiss it?

15           MR. KANOWITZ:  If the majority decision

16   was written out, yes, they could file bankruptcy.

17   And the question would be, was it authorized?  It's

18   still whether it's authorized.

19           THE COURT:  Let's just say take it out of

20   this context.  Let's say that it's not about this

21   sort of agreement.  Again, someone who clearly has

22   no real authority to file bankruptcy petition,

23   again, this person out on the street who decides to

24   file a petition on behalf of Sears, they have no

25   connection to Sears at all.  They file it and it

```
 1    would get dismissed.  But they would have a right to
 2    file.  They just wouldn't have a right to keep it
 3    there; is that correct?
 4              MR. KANOWITZ:  I assume if you mean the
 5    right to file and be not subject to other problems,
 6    i.e., a false oath of bankruptcy crime, you know,
 7    sanctions, yes.  The answer is yes.  You could go to
 8    the clerk's office.  In fact, it's electronic filing
 9    these days.  You don't even go to the clerk's
10    office, as you know.  And you could file, and under
11    penalty of perjury say, I'm authorized to file, and
12    this is the company that needs to be filed, and you
13    could attach a fraudulent fake resolution.  Yes, you
14    could do that.
15              THE COURT:  Okay.  Let me hear from
16    defendant, AREH, on that.
17              MR. MILIN:  Your Honor, thank you.
18              We've heard some mischaracterizations
19    from plaintiff in that last dialogue, and I think
20    it's important to take a step back.
21              First, I'd like to emphasize what the
22    facts really are here, because it's undisputed that
23    Arch is a vertically-integrated enterprise, that it
24    manages about 20 real properties, that it has
25    creditors, employees, and its subsidiaries have
```

1     creditors and employees, altogether about 60

2     employees enterprise-wide and $150 million in

3     investors.

4          Oak admits that it represents only about

5     a third of that amount, 50 million of the 150.  Oak,

6     on the other hand, is the 2023 version of the astute

7     creditor discussed in case law.  Under the LLC

8     agreement, Oak is an investor member prohibited from

9     engaging in management, and the agreement doesn't

10    subject Oak to fiduciary duties.  They talked a lot

11    about fiduciary duties today, but they haven't said

12    that they have any.

13         And Mr. Weiner's declaration says that

14    Oak has contributed $3 million to Arch, and that

15    they're entitled to receive that money back before

16    any revenues are distributed as returns on equity.

17    Moreover, the 3 million is only a fraction of the 50

18    million that Oak says it's invested in Arch

19    Properties.

20         So, Your Honor, I think it's important

21    context for this issue to see that Oak is not just

22    an ordinary LLC member exercising ordinary member

23    rights in an ordinary LLC.  Yes, it's an equity

24    owner rather than a lender, but in important ways

25    for purposes of analyzing its right to block a

1    bankruptcy, it's very like a creditor holding a

2    golden share purchased for a fraction of its total

3    investment.

4              Now, they want, given those facts, what's

5    really going on here, Your Honor, is not that we're

6    threatening bankruptcy, but that we're trying to

7    protect the right to protect the stakeholders as a

8    whole.  And there are a lot of them.  What Oak wants

9    to do is, as a minority LLC member and a minority

10   investor, hijack the company to protect their own

11   interests at the expense of those stakeholders.

12             I mean, Your Honor, they're not talking.

13   They didn't respond to our saying, yeah, we want to

14   talk by saying, okay, let's talk next Tuesday.

15   They're not funding.  They have reasons why not, but

16   we don't accept those reasons.  They're seeking a

17   receiver in state court, and they're even seeking a

18   proposed order in state court to take over the

19   company.

20             Your Honor, in that circumstance, Oak

21   can't be allowed to hijack a potential bankruptcy

22   filing, hijack the interests of all stakeholders.

23   Oak should be subordinate to the federal policy of

24   protecting all stakeholders, ensuring the right to

25   reorganize and benefiting society in that way.

1          THE COURT:  Okay.  Let me hear from

2   defendant, JJ Arch and Simpson.

3          MR. ISRAEL:  Your Honor, we subscribe to

4   what ACEH just said.  Nothing further.

5          THE COURT:  Okay.  Let me find out from

6   defendants, is there any imminent desire to file for

7   bankruptcy?  Let me hear -- go ahead.

8          MR. MILIN:  Sorry, Your Honor.  There's

9   no imminent desire to file for bankruptcy.  Nobody

10  wants to file for bankruptcy if it's avoidable, and

11  we're working very hard to make it unnecessary.  But

12  we are kind of stuck for cash right now because Oak

13  isn't funding.

14         THE COURT:  And let me hear from the

15  other defendant, JJ Arch and Simpson on this.

16         MR. ISRAEL:  That's right, Your Honor.

17  There's no immediate desire to file for bankruptcy.

18  It's a necessary option in the event that we can't

19  survive.

20         THE COURT:  Okay.  Here's what I think

21  makes sense.  I still need to figure out for certain

22  whether or not I have jurisdiction.  At this point,

23  I believe that I do.  But I want to make absolutely

24  sure.  So let's do this, especially in light of the

25  fact that the defendants have indicated there's no

1    immediate desire to file for bankruptcy.  I will

2    extend the TRO until November 2nd, a week from

3    tomorrow.  And we'll have a conference at 3:00 that

4    day.

5              Are counsel available that day?  Counsel

6    for plaintiff?

7              MR. KANOWITZ:  Checking my telephone.

8              THE COURT:  It will be by telephone.

9              MR. KANOWITZ:  So you want to have a

10   conference on November 2nd in the afternoon at 3:00,

11   the Thursday?

12             THE COURT:  Yes.

13             MR. KANOWITZ:  Your Honor, I am

14   available.  I assume Ms. Thorne is also available as

15   she is co-counsel with me on this matter.

16             THE COURT:  Ms. Thorne, are you

17   available?

18             MS. THORNE:  I am.  Thank you, Your

19   Honor.

20             THE COURT:  All right.  And defendant, JJ

21   Arch and Simpson, are you available at that time?

22             MR. ISRAEL:  Yes, we are, Your Honor.

23             THE COURT:  And defendant, AREH, are you

24   available at that time?

25             MR. MILIN:  Unfortunately, Your Honor, we

```
1    do have a hearing in another matter scheduled that

2    day, but we believe that it can be postponed.  So we

3    believe that we will be available, and we'll

4    promptly let the Court know if there's any issue.

5              THE COURT:  What time is your other

6    hearing in that other matter?

7              MR. MILIN:  10:00 a.m.

8              THE COURT:  Okay.  What sort of

9    hearing -- do you think that hearing is going to

10   take until 3:00?  Again, we're going to do this by

11   telephone.

12             MR. MILIN:  Your Honor, you have us

13   scared.  No, 3:00 would be fine to appear before

14   Your Honor.

15             THE COURT:  Okay.  We'll do that by

16   telephone.  All right.  So I'll extend the TRO until

17   November 2nd.  I want to make sure that I have

18   jurisdiction on this.  Again, I believe right now

19   that I do.

20             The other thing that I would do -- or the

21   other thing I will do is, I will certainly encourage

22   the parties to actually sit down with each other,

23   maybe grab a cup of coffee and not focus on what has

24   happened in the past or the tone of some of the

25   filings in state court or here, and see if the
```

1    parties can come to some sort of détente.  It does

2    seem that all parties are interested in trying to

3    resolve this matter amicably, which is good to hear.

4         And, again, sometimes in resolving

5    matters, it is like a 7th grade dance.  No one wants

6    to go first.  So I'd encourage the parties to try to

7    put some of the past behind them and try to meet and

8    talk about these things, and, perhaps, give me a

9    joint status report -- well, first let me find out,

10   are the parties willing to do that; to actually sit

11   down and try to have some conversations with each

12   other?  Plaintiff's counsel?

13        MR. KANOWITZ:  Yep.  For the plaintiff,

14   absolutely, Your Honor.

15        THE COURT:  Counsel for AREH?

16        MR. MILIN:  Of course, Your Honor.

17        THE COURT:  And counsel for JJ Arch and

18   Simpson?

19        MR. ISRAEL:  Yes, Your Honor.

20        THE COURT:  Okay.  Let's do that.  And

21   then let's get a joint status report from the

22   parties on Tuesday the 31st, on Halloween.  And

23   hopefully the parties may be able to resolve this

24   amongst themselves or resolve a lot of this amongst

25   themselves.  So that would be a joint status report

1    filed with the Court on October 31st.

2              Anything else from plaintiff today?

3              MR. KANOWITZ:  No, thank you, Your Honor.

4    I appreciate the time.

5              THE COURT:  Anything else from either of

6    the defendants?

7              MR. MILIN:  Not from JJ Arch, Your Honor.

8              THE COURT:  And in that joint status

9    report, let me know if, in fact, the parties have

10   resolved this, or if the parties are making progress

11   and wish to have some more time to work this out and

12   want to extend or adjourn the date on November 2nd.

13   Let me know that in the joint status report on the

14   31st, okay?

15             MR. MILIN:  Yes, Your Honor.

16             MR. ISRAEL:  Okay, Your Honor.  Thank

17   you.

18             THE COURT:  All right.  Okay.

19             Anything else from plaintiff?

20             MR. KANOWITZ:  No, Your Honor.  Thank

21   you.

22             THE COURT:  Anything else from either

23   defendant?

24             MR. ISRAEL:  No, Your Honor.

25             MR. MILIN:  No, Your Honor.  Thank you.

1                THE COURT:  Okay.  We're adjourned.

2        Thank you.

3                MR. ISRAEL:  Thank you.

4

5                            0o0

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T E

3

4        I, Adrienne M. Mignano, certify that the

5    foregoing transcript of proceedings in the case of

6    608941 NJ v. Simpson, et al.; Docket #23CV8966 was

7    prepared using digital transcription software and is

8    a true and accurate record of the proceedings.

9

10

11   Signature    _Adrienne M. Mignano_____

12                  ADRIENNE M. MIGNANO, RPR

13

14   Date:       October 27, 2023

15

16

17

18

19

20

21

22

23

24

25